Donal J. KELLEY, Plaintiff, Appellee,

v.

SCHLUMBERGER TECHNOLOGY CORPORATION, Defendant, Appellant.

No. 87–1933.

United States Court of Appeals, First Circuit.

Heard April 6, 1988.

Decided June 15, 1988.

Richard H. Pettingell with whom D. Alice Olsen, Adam J. Brodsky and Morrison, Mahoney & Miller were on brief for defendant, appellant.

Philip E. Cleary with whom Gerald T. Anglin and Freeley & Freeley were on brief for plaintiff, appellee.

Before COFFIN, BOWNES and SELYA, Circuit Judges.

BOWNES, Circuit Judge.

This action arises from the discharge by appellant-defendant Schlumberger Technology Corporation of plaintiff-appellee Donal J. Kelley from an offshore drilling rig in the Gulf of Mexico after two urinalysis tests allegedly showed positive results for the presence of marijuana. Originally brought in state court, the case was removed to the United States District Court for the District of Massachusetts in December 1985. In his second amended complaint, filed on August 13, 1987, the plaintiff challenged the establishment, implementation, and administration of the drug testing program, as well as his discharge pursuant to it. He alleged an invasion of privacy under the Louisiana Constitution (Count One), tortious invasion of privacy (Count Two), wrongful discharge (Count Three), intentional infliction of emotional distress (Count Four), negligent infliction of emotional distress (Count Five), and defamation (Count Six). During the trial, the court directed a verdict for the defendant on Count Three, and the plaintiff voluntarily dismissed Count Four and Count Six. The jury found for the plaintiff on the three remaining counts: for violating the plaintiff's right to privacy (Counts One and Two), the jury assessed damages at $1.00; and for negligently inflicting emotional distress on the plaintiff (Count Five), the jury assessed damages at $125,000.

Defendant raises two issues on appeal. First, it claims that the court erred in instructing the jury on the law governing Count Five, the negligent infliction of emotional distress. Second, it claims that the court abused its discretion in excluding certain statistical evidence offered to show the reasonableness of the drug testing program. We affirm.

## I. BACKGROUND

At the time of his discharge, the plaintiff worked as a barge engineer on a drilling rig, the "Pentagon–82" (P–82), owned by the defendant and operating sixty miles off of the coast of Louisiana in the Gulf of Mexico. From March 1985, when he commenced his duties on the P–82, the plaintiff worked a schedule which alternated between two weeks of duty and two weeks of leave. On May 24, 1985, while on one such leave, the plaintiff was contacted at his home and asked to return to the P–82 early because his relief had become ill. He re-

ported back aboard the rig on May 26. On May 29, the defendant administered urinalysis tests to all personnel on the P–82, including the plaintiff. To insure against adulteration or substitution of the sample, a representative of the defendant watched as the plaintiff provided the sample. This aspect of the administration of the test was a critical component of the defendant's drug testing program, a program which the defendant had developed over a period of two years, from 1982 through 1984, as a way to control suspected drug use among those working on drilling rigs. Direct observation of employees urinating was also at the core of the plaintiff's complaint. During the trial he described himself as being "disgusted by the whole idea of someone being paid to look at [his] penis while [he] urinated." After the first urinalysis test yielded what the defendant asserted were "positive results," the defendant tested the plaintiff a second time. Again, the defendant claimed that the results showed an unacceptably high level of marijuana in the plaintiff's urine. As a result, the plaintiff was discharged on June 6, 1985.

## II. THE JURY INSTRUCTION

The defendant claims that it was prejudiced by the district court's instruction on the law governing the claim for the negligent infliction of emotional distress. Plaintiff responds with two arguments. First, he alleges that the defendant did not preserve its right to review of any additional instructions that it now asserts the court should have given. Second, he alleges that even if the defendant did preserve its right of review, the court properly instructed the jury. We agree with the plaintiff on both scores.

It is helpful, at the outset, to present that part of the jury charge under challenge. After instructing the jury on the law governing the claims for invasion of privacy, the court continued with the claim for the negligent infliction of emotional distress:

The law says that every person—you, I, everybody, including Schlumberger—has a duty to use ordinary care to not injure others, not to inflict reasonably foreseea-

ble harm to others. Now, ordinary care simply means that care which a reasonably prudent person would exercise under similar circumstances. If the person fails to use that ordinary care, he may be found to have been negligent. And if harm results from that failure, then the person may be found liable.

In the context of this case, an employer, like, Schlumberger, has a duty to use reasonable care in implementing and administering its drug program so as not to cause serious emotional distress to its employees.... So, the question, again, is: Did the defendant use reasonable care both in implementing the drug policy and in administering the urine test, given all of the circumstances surrounding its conduct and the particular concerns which the defendant had to meet?

. . .

If you find that the defendant has failed to use reasonable care in either respect, then you have to determine next whether the defendant's conduct foreseeably [sic] caused the plaintiff serious emotional distress. Note, this is a little different. Here, we're not talking about whether there was an invasion of privacy, but whether there was a direct, serious impact on plaintiff's psychological well-being, if you will.

If you find that the plaintiff has shown that the defendant acted unreasonably in implementing and administering the drug testing and that a reasonable person in the plaintiff's position would have been seriously distressed, then, the answer to Question 2(a) is yes; otherwise it is no.

After the court completed the charge, defendant's counsel said:

On your instruction on Count 2, the intentional [sic] infliction of emotional distress, your Honor touched very, very briefly on the foreseeability issue, vis-a-vis, the employee; in other words, that it was reasonably foreseeable to the employer that a person in Mr. Kelley's position would have reacted the way he claims he did. I would ask that you go over that again, because I really think that was missed.

■ This comment does not satisfy the "uncompromising language" of Federal

Rule of Civil Procedure 51. *Elwood v. Pina,* 815 F.2d 173, 175 (1st Cir.1987). Rule 51 requires that a party seeking to "assign as error the giving or the failure to give an instruction" must "stat[e] distinctly the matter objected to and the grounds of the objection." We have held parties to a firm adherence to Rule 51 because the very reason for the rule is to give the trial court an " 'opportunity to correct any errors before it is too late.' " *Brown v. Freedman Baking Co.,* 810 F.2d 6, 9 (1st Cir.1987) (quoting *McGrath v. Spirito,* 733 F.2d 967, 968 (1st Cir.1984)); *see Elwood,* 815 F.2d at 174–76; *CVD, Inc. v. Raytheon Co.,* 769 F.2d 842, 858–59 (1st Cir.1985), *cert. denied,* 475 U.S. 1016, 106 S.Ct. 1198, 89 L.Ed.2d 312 (1986); *Jordan v. United States Lines, Inc.,* 738 F.2d 48, 50–51 (1st Cir.1984). If the objection is too ambiguous to give the trial court that opportunity, then the opportunity is missed, and the prophylactic purpose of the rule undermined.

Counsel here complained that the court "touched very briefly" on the "foreseeability issue" and that he would like for the court to "go over that again." He did not explain with precision which aspect of the charge was objectionable. Nor did he explain how the phrase that he set forth— "that it was reasonably foreseeable to the employer that a person in Mr. Kelley's position would have reacted the way he claims he did"—differed from the language used in the charge. His failure to object with the requisite specificity amounts to a failure to object. Accordingly, we will only reverse the judgment if "there is plain error 'in exceptional or under peculiar circumstances to prevent a clear miscarriage of justice.' " *Brown,* 810 F.2d at 9 (quoting *Nimrod v. Sylvester,* 369 F.2d 870, 873 (1st Cir.1966)); *see Morris v. Travisono,* 528 F.2d 856 (1st Cir.1976) (applying "plain error" exception to Rule 51).

We see no "plain error" here. In fact, we see no error at all. The controlling law in the case was the law of Louisi-ana.[1] In Louisiana, a plaintiff may recover for negligently inflicted emotional injuries even in the absence of any accompanying physical injury. *See Chappetta v. Bowman Transp., Inc.,* 415 So.2d 1019, 1022–23 (La.App.1982). Liability is limited, however, "to those emotional injuries that were foreseeable or that could have been reasonably anticipated to result from the negligent act." *Id.* at 1023. Moreover, the "mental suffering must be more than minimal worry and inconvenience over the consequences of the damage." *Dousson v. South Central Bell,* 429 So.2d 466, 469 (La.App.1983) (citing *Meyers v. Basso,* 381 So.2d 843 (La.App.1980), *writ denied,* 384 So.2d 794 (La.1980)).

The defendant asserts that "the court should have instructed that the plaintiff could recover only if his emotional distress was foreseeable, that it anticipated that a reasonable person in the plaintiff's position would have sustained serious emotional distress as a result of the defendant's conduct." The language used by the court appears in the charge at two points. First, the court instructed the jury "to determine next whether the defendant's conduct foreseeablely [sic] caused the plaintiff serious emotional distress." Later, the court instructed that the defendant could be held liable only if the jury found "that a reasonable person in the plaintiff's position would have been seriously distressed" by the defendant's implementation and administration of the drug testing program. We simply fail to understand how any construction of this language could be found to differ substantively from the language offered here by defendant. The court communicated the defendant's point, almost word for word. More importantly, the court "properly convey[ed] the applicable law of the case." *Kibbe v. City of Springfield,* 777 F.2d 801 (1st Cir.1985), *cert. dismissed,* 480 U.S. 257, 107 S.Ct. 1114, 94 L.Ed.2d 293 (1987) (citations omitted); *see McKinnon v. Skil Corp.,* 638 F.2d 270, 275 (1st Cir.1981) ("As long as the judge's instruction properly apprises the jury of the applicable law,

---

1. In a memorandum issued on April 13, 1987, the court held that Louisiana law was controlling. Finding that the "basic choice of law rule for tort claims is *lex loci delecti,*" the court concluded that "[a]ll of the events significant to [the plaintiff's] claim took place in Louisiana." Neither party has challenged this ruling on appeal.

failure to give the exact instruction requested does not prejudice the objecting party.").

## III. THE EXCLUSION OF EVIDENCE

■ During trial, the defendant offered evidence based on data gathered in the two years after the plaintiff was discharged to show that drug use on the rigs and lost time injuries declined after the drug testing program went into effect.[2] The defendant argued that this evidence was relevant to the reasonableness of its policy: "if the approach is successful, it is reasonable." The court, however, refused to admit this evidence on the ground that any evidence of the policy's reasonableness which developed after the time that the plaintiff was discharged could not be relevant to the question of whether the policy was reasonable in June 1985. The defendant here argues that this ruling by the district court constituted an abuse of discretion. We do not agree.

Negligence is conduct "'which falls below the standard established by law for the protection of others against unreasonable risk of harm.'" W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts* § 31, at 169 (5th ed. 1984) (quoting Restatement (Second) of Torts § 282). Assessing "risk" is simply another way of asking whether a harm is "foreseeable": to escape liability, a defendant need not anticipate all possible consequences of a given action, but only those dangers "which [are] apparent or should be apparent to one in the position of the [defendant]." *Id.* at 170. In other words, "the [defendant's] conduct must be judged in the light of possibilities apparent to him [or her] *at the time,* and not by looking backward...." *Id.* (emphasis added) (footnote omitted).

Here, the possibilities apparent to the defendant *at the time* of the discharge were those apparent in 1985; whether the program *eventually* proved successful (or unsuccessful) has no bearing on whether it was reasonable for the defendant, given what it knew in 1985, to implement and administer that program in 1985. We therefore find no abuse of discretion by the court in excluding all data on the drug testing program that the defendant generated in the two years subsequent to the plaintiff's discharge. *See A.J. Cunningham Packing Corp. v. Florence Beef Co.,* 785 F.2d 348, 350 (1st Cir.1986) (admission or exclusion of evidence is within the sound discretion of the trial court).

The defendant relies extensively upon *Heagney v. University of Washington,* 642 F.2d 1157 (9th Cir.1981), *overruled on other grounds, Atonio v. Wards Cove Packing Co.,* 810 F.2d 1477 (9th Cir.1987) (en banc), *cert. denied,* —— U.S. ——, 108 S.Ct. 1293, 99 L.Ed.2d 503 (1988), as support for its position that the fact that the data was compiled after the administration of the drug test to the plaintiff was an inadequate basis for its exclusion. Specifically, the defendant points to the holding in *Heagney* that a study done in 1975 was admissible to show that the plaintiff had been discriminated against on the basis of her sex in 1973. *Id.* at 1165. But the court in *Heagney* noted that the study there was probative as to conditions existing at the time that the alleged discrimination occurred. "Under the circumstances," the court said, "it is extremely unlikely that the approximately twenty-two month delay between Heagney's resignation and the salary data collected [in 1975] had any significant impact on the probative force of the study as to *the existence of conditions when Heagney was an employee.*" *Id.* (emphasis add-

---

2. Specifically, the court excluded four documents: Exhibit X, which compared the number of lost time injuries in 1984 and 1985 to the total work hours; Exhibit Y, which showed, for each month in 1986, the number of lost time injuries, the number of persons tested, and the number of positive test results for all rig personnel and for the personnel employed by the plaintiff's division of the company only; Exhibit Z, which contained the same categories of information for the first seven months of 1987; and Exhibit CC, which contained the number tested, the number of positive results and the number of rigs for all personnel and the personnel employed by the plaintiff's division of the company only for 1984 through 1987. In addition to this documentary evidence, the defendant sought to introduce the testimony of Safety Director James Turnage, who was to comment on those statistics and the effectiveness of the drug testing program.

ed); *see also Rocky Mountain Helicopters v. Bell Helicopters Textron*, 805 F.2d 907 (10th Cir.1986) (holding as admissible an investigative report completed after a challenged event which revealed what happened at the time of that event); *Westmoreland v. CBS, Inc.*, 601 F.Supp. 66 (S.D.N.Y.1984) (same). Here, by contrast, the defendant sought to introduce evidence which was probative as to the reasonableness of the program two years after the discharge, in 1987, and not at the time of it, in 1985. The reliance upon *Heagney* is misplaced.

Because we find no abuse of discretion in admitting the evidence, we need not address whether its exclusion was nonetheless harmless. *See* Federal Rule of Civil Procedure 61.

*Affirmed.*