Pichowicz v. Hoyt                          CV-92-388-M    02/11/00

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Nicholas and Joan Pichowicz,
        Plaintiffs

        v.                                      Civil No. 92-388-M
                                                Opinion No. 2000 DNH 040
Pearl M. Hoyt,
        Defendant


**O R D E R**


    Plaintiffs move to amend the judgment or for new trial on several grounds, but basically because they believe the court erred in not awarding damages for severe emotional distress and in failing to credit the medical causation testimony of their expert, Dr. Robert Feldman.

    In its previous order (document no. 173) the court ruled that plaintiffs had met their burden of establishing, by a preponderance of the evidence, that their property was damaged by the migration of volatile organic compounds from defendant's property, and awarded damages in the amount of Two Hundred Five Thousand Three Hundred Eleven Dollars ($205,311.00).

However, the court also determined that plaintiffs failed to meet their burden of persuasion regarding causation as related to claimed personal injuries (various medical conditions and ills including depression, neurological abnormalities, headaches, memory loss, tremors, numbness, lack of balance, sleeplessness). Essentially, the court found Dr. Laura Green's expert testimony to be credible and Dr. Robert Feldman's expert testimony neither persuasive nor credible. Accordingly, the court found that plaintiffs' ingestion of low levels of volatile organic compound (VOC) contaminants prior to 1984 did not cause or substantially contribute to cause their asserted medical difficulties, since the contaminants at issue were not shown by a preponderance to have neurotoxic effects, and were not shown by a preponderance to be causally linked to any of plaintiffs' claimed difficulties.

## Severe Emotional Distress Claim

In their motion to amend the judgment, plaintiffs argue that even if they did not establish a _medical_ causal link between the comparatively small amounts of ingested VOCs and their claimed

medical and psychological problems, they did demonstrate a psychological connection. That is, they say that learning that the well was contaminated, even at low levels, and realizing they drank from it, combined to evoke a natural reaction of severe emotional distress, rising to the level of clinically diagnosed depression, with accompanying physical manifestations (i.e., the alleged tremors, sleeplessness, memory loss, lost motivation, physical imbalance, etc.). So, they argue, under applicable New Hampshire law, they are at least entitled to recover damages for severe emotional distress.

Plaintiffs did not bring an action for negligent or intentional infliction of emotional distress against Defendant Hoyt. Rather, they brought a straight negligence claim (Count III). But, in Thorpe v. State of New Hampshire Department of Corrections, et al., 133 N.H. 299 (1990), New Hampshire's Supreme Court applied the Corso v. Merrill, 119 N.H. 647 (1979) standard for negligent infliction of emotional distress recovery to negligence actions:

3

> Therefore, we conclude that before a plaintiff can recover damages for emotional distress pursuant to a negligence cause of action, he or she must prove that physical injury resulted therefrom.

Thorpe, 133 N.H. at 304. And, the court held that "when damages for impact are not sought [in a negligence case], expert testimony is required to prove that the plaintiff experienced physical symptoms from the alleged emotional distress." Id., at 305. Damages for "impact" are not sought by plaintiffs.

Plaintiffs rely on the testimony of Dr. Ronald J. Kulich, a psychologist, to establish their psychological injury and a causal link to the contamination. Dr. Kulich testified that there was no question in his mind that Mr. Pichowicz suffered from severe depression "precipitated by his reaction to discovering that there was toxic waste on his land" and his fear of its effect on his spouse, children, and grandchildren. But, Dr. Kulich also described Mr. Pichowicz's depression as being "secondary to neurological deficits and major life stressors and persistent pain and related disabilities," none of which were actually caused by his ingestion of the comparatively small

4

amounts of VOCs at issue in this case (at most 20 to 100 parts per billion over a limited time period).

Dr. Kulich opined that Mrs. Pichowicz suffered from "major depression precipitated by the discovery of her toxic exposure." But, he also observed that the strain generated by coping with Mr. Pichowicz also caused her major stress, and, as discussed in the earlier order (document no. 173), other explanations and causes existed that would more plainly explain Mrs. Pichowicz's depression.

Dr. Thomas, plaintiffs' treating physician, also testified about the plaintiffs' depression and possibly related physical symptoms, but offered no persuasive opinions regarding medical causation relative to low level VOC ingestion, or even whether their physical symptoms could be tied to the depression (i.e., emotional distress caused depression which in turn caused physical manifestations).

Assuming, without deciding, that there is enough in this record to satisfy the Corso and Thorpe predicates to recovery of

5

emotional distress damages (and that is arguable), nevertheless, plaintiffs still failed to meet their burden of persuasion.

In New Hampshire, as elsewhere, "the specific circumstances under which a plaintiff may recover damages for emotional distress are limited by the doctrine of foreseeability."  Corso, 199 N.H. at 651-52.  So, not only must a plaintiff suffer physical harm caused by the emotional distress alleged, but the physical harm must also be manifested by objective symptomatology and confirmed by expert medical testimony.  And, critical here,

> the emotional distress for which compensation is sought
> must be reasonably foreseeable:  unless a plaintiff
> proves that the defendant knew or should have known of
> special factors affecting that plaintiff's response to
> the circumstances of the case, the plaintiff can
> recover only for that degree of emotional distress
> which a reasonable person, normally constituted, would
> have experienced under those circumstances.  Whether
> the emotional distress which a plaintiff is alleged to
> have experienced is reasonable, is to be determined by
> the finder of fact.

Payton v. Abbott Labs, et al., 386 Mass. 540, 557, 437 N.E.2d 171, 181 (1982); see also, Kelley v. Schlumberger Technology Corp., 849 F.2d 41, 44 (1st Cir. 1988) (jury instructions

6

correctly advised that plaintiff can only recover for emotional distress if it was foreseeable and "a reasonable person in the plaintiff's position would have been seriously distressed" under the circumstances). See generally Orono Karate, Inc. v. Fred Villari Studio of Self Defense, Inc., 776 F.Supp. 47, 50 (D.N.H., 1991) (there is no material conflict as to recovery for emotional distress among the jurisdictions of New Hampshire, Maine, and Massachusetts); Morancy v. Morancy, 134 N.H. 493 (1991) (the law only intervenes when the distress inflicted is so severe that no reasonable person could be expected to endure it).

In this case plaintiffs cannot recover for two basic reasons. First, their claimed severe emotional distress (diagnosed depression) was not reasonably foreseeable because a reasonable person, normally constituted, would not have experienced severe emotional distress under the circumstances of this case. To be sure, a reasonable person, normally constituted, who learned that measurable migration of VOCs contaminated their property, and found its way into his or her well at levels of 20 - 100 ppb (comparatively small quantities),

7

and he or she ingested that water for a period of time years earlier, would no doubt be anxious, even angry and upset. But, it does not follow that any and every exposure to or ingestion of low levels of VOCs in drinking water warrants imposition of emotional distress damages, simply because the particular plaintiff in fact suffered severe emotional distress.

Both the entitlement to emotional distress damages and the measure of such damages are limited by the tort concept of reasonable foreseeability – i.e., would a reasonable, normally constituted, person suffer severe emotional distress under these circumstances, and if so, to what degree? Thus, plaintiffs bore the burden of demonstrating that their asserted injuries were reasonably foreseeable. They failed to carry that burden. Consequently, I find that a reasonable, normally constituted person would not suffer compensable severe emotional distress under the circumstances of this case. A reasonable person would understand that the well contamination levels were relatively minor, and ingestion of water from the well at low levels would probably not cause any discernable or long term or debilitating

neurotoxic effects, and, although the contaminants exceeded EPA safe drinking water standards, the risk of actual injury to health was statistically increased only slightly, if at all. Certainly, no persuasive evidence was presented suggesting otherwise, (and no persuasive evidence or argument was presented showing that a reasonable person either would or should react to these circumstances with justifiable alarm or severe emotional distress). While there was passing reference to the character of the contaminants as carcinogens, plaintiffs did not (and do not) complain of an increased risk of, or fear of, developing cancer. They did not introduce persuasive evidence of or argue the probabilities of increased risk of cancer, or whether such apprehensions, if they actually harbored them, were reasonable or even realistic.

Plaintiffs fairly straightforwardly pursued the theory that the contaminants themselves caused their neurological complaints and depression. To the extent they also argue that their depression was caused by their perception or fear of diffuse health risks or injuries, I find that the circumstances of this

9

case would not give rise to severe emotional distress or serious depression in a reasonable, normally constituted person.

Plaintiffs claim they nevertheless did suffer severe emotional distress, but that is not dispositive here, because, even if they are not substantially exaggerating their subjective complaints, the defendant is only liable to the extent a reasonable person would suffer severe emotional distress under the circumstances. The degree to which a reasonable person would suffer emotional distress under these circumstances (assuming that he or she could be expected to suffer severe emotional distress) would at best be minimal, warranting only nominal damages. "Absent specific knowledge of plaintiff's unusual sensitivity, there should be no recovery for hypersensitive mental disturbance where a normal individual would not be affected under the circumstances." Daley v. LaCroix, 179 N.W. 2d 390, 396 (Mich. 1970) (citations omitted).

Plaintiffs' emotional distress damages claims fail, then, for several discrete reasons. A reasonable person would not suffer severe emotional distress under the circumstances of this

10

case. Even if reasonable people could (legally) suffer severe emotional distress under the factual circumstances of this case, the degree and duration would be minimal, warranting only nominal damages. Plaintiffs did not prove by a preponderance of the evidence that low level contaminants in their well cause neurotoxic effects, and their claimed distress based on that fear is not reasonable. Plaintiffs failed to offer evidence to support (and did not claim) that they suffered severe emotional distress based upon other concerns – like the potentially carcinogenic nature of the contaminants (i.e., nature and degree of an elevated risk of disease, and fear of developing such disease). And, the court is persuaded that plaintiffs' diagnosed depression, a rather extreme reaction under these circumstances, was not a foreseeable result of the low level contamination, and was not substantially caused or contributed to by the contamination, given the other plausible causes and evidence of basically normal physical examinations (i.e., Mr. Pichowicz' neurological examination).

11

Plaintiffs also take issue with the court's failure to accept Dr. Feldman's medical causation testimony as either persuasive or scientifically reliable, beyond perhaps suggesting a basis for further scientific inquiry into a possible causal connection between low level exposure to VOCs (like TCE) in drinking water for a defined period of years and neurological injuries of various sorts. Plaintiffs also suggest that post-hearing literature submitted at the court's invitation support their position and might have been overlooked. To the contrary, the literature submitted by Dr. Feldman tends to support Dr. Green's expert opinion testimony. An exhaustive dissection is unnecessary, but the articles and related material submitted by Dr. Feldman (document no. 169) generally do <u>not</u> establish the neurotoxicity of low level exposure to VOCs (like TCE) in drinking water over defined periods of time, and in fact are replete with scientific disclaimers. <u>See, e.g.</u>, Exhibit A-1. "This indicated a <u>possibility</u> of an <u>association</u> of contaminated water with the manifestation of symptoms. It is <u>hypothesized</u>

12

that the increased rate of symptoms observed in the exposed group, when compared to the control group, may have been caused by one or more of the following factors: (1) effect of TCE at a threshold level higher than 28 ppb [about the levels involved in this case], (2) effect of a single chemical entity other than TCE, and (3) additive or synergistic effects of several chemicals. It is also possible that there are factors other than water contaminants associated with the recorded symptoms, e.g. stress, that may have had an important influence in the exposed group but not in the control group." (emphasis added) And: "The data indicate that there were no observable adverse health effects in the exposed group of residents, compared with the control group, which could be ascribed to long-term, low-level exposure to trichloroethylene (TCE) and other volatile organic compounds." (emphasis added)); see also Exhibits A-3 (open debate about the real mechanism of TCE neurotoxicity); A-5 (no significant difference between exposed and control group, but subjective complaints in exposed group "warrant further attention"); A-9 ("Also misleading is the sentence that 'TCE is

13

neurotoxic.'"); B-6 (clear evidence of alterations in the nervous system from TCE exposure are few, except after exposure to very high doses); D-4 (recent article of Feldman, et al., recommends an electrodiagnostic test for a nonexistent disorder; TCE does not cause cranial neuropathy).

Certainly further scientific inquiry into the matter may be warranted, but as to medical causation of plaintiffs' complaints of physical injury, the court accepted Dr. Green's testimony, rejected Dr. Feldman's testimony, and found that plaintiffs failed to meet their burden of proof on that issue. Plaintiffs have asserted no grounds warranting reexamination of those findings, and no damages are awarded for plaintiffs' claimed medical/neurological injuries because they failed to establish causation. No damages are awarded for severe emotional distress for the reasons discussed.

## Conclusion

14

Plaintiffs' Motion for New Trial and/or to Amend Judgment (document no. 175) and Supplemental Motion for New Trial and/or to Amend Judgment (document no. 176) are denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

February 11, 2000

cc:  Linda J. Argenti, Esq.
     Joseph G. Abromovitz, Esq.
     M. Ellen LaBrecque, Esq.
     Peter S. Wright, Jr., Esq.
     Thomas H. Richards, Esq.