[Cite as *Lunsford vs. Sterlite of Ohio, L.L.C.*, 2018-Ohio-3437.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | | |
|---|---|---|---|
| DONNA L. LUNSFORD, ET AL., | : | | JUDGES: |
| | : | | Hon. W. Scott Gwin, P.J. |
| Plaintiffs - Appellants | : | | Hon. William B. Hoffman, J. |
| | : | | Hon. Criag R. Baldwin, J. |
| -vs- | : | | |
| | : | | |
| STERILITE OF OHIO, LLC, ET AL., | : | | Case No. 2017CA00232 |
| | : | | |
| Defendants - Appellees | : | | O P I N I O N |

CHARACTER OF PROCEEDING:              Appeal from the Stark County Court
                                      of Common Pleas, Case No.
                                      2016CV02774

JUDGMENT:                             Reversed and Remanded

DATE OF JUDGMENT:                     August 24, 2018

APPEARANCES:

For Plaintiffs-Appellants                 For Defendants-Appellees

S. DAVID WORHATCH                         JOHN N. CHILDS
Law Offices of S. David Worhatch          DANIEL J. RUDARY
4920 Darrow Road                          Brennan, Manna & Diamond, LLC
Stow, Ohio 44224-1406                     75 East Market Street
                                          Akron, Ohio 44308

*Baldwin, J.*

**{¶1}** This appeal arises from the trial court's dismissal of the Appellants' complaint after finding that the complaint failed to state a claim for which relief may be granted. (Civ.R. 12(b)(6)). As required by that Rule, we assume that the facts alleged in the complaint are true and construe all reasonable inferences in favor of the Appellants.

**{¶2}** Within that context, we set forth the relevant facts below

## STATEMENT OF THE FACTS AND THE CASE

**{¶3}** Appellants Adam Keim ("Keim"), and Laura Williamson ("Williamson") were employees of Appellee Sterilite of Ohio, LLC and Appellants Donna L. Lunsford ("Lunsford"), Peter D. Griffiths ("Griffiths"), are still so employed. Appellee Sterilite of Ohio, LLC, ("Sterilite") is a limited liability company located at 4495 Sterilite Avenue, S.E., in Massillon, Ohio. Appellee Sterilite, LLC ("the Parent Company"), is a limited liability company that is the parent company of the Appellee Sterilite. Defendant U.S. Healthworks Medical Group of Ohio, Inc. ("U.S. Healthworks"), is a corporation located at 2626 Fulton Drive, N.W., Canton, Ohio.

**{¶4}** Appellee Sterilite adopted a Substance Abuse Policy, a copy of which was attached to the complaint. The Policy warned of testing for "reasonable suspicion that an employee may be impaired by the use of drugs or alcohol in violation of this policy," and that the company would conduct "random testing at periodic intervals to maintain safety and productivity." The Policy explained that Sterilite would use a urinalysis method to test for the use of illegal drugs or the improper use of prescription or over-the-counter drugs. The Policy described the procedure and the consequences of refusal or failure to take the test as follows:

Employees to be tested will be informed by their Supervisor as to when and where they are to report for testing. Employees will be granted up to two and one-half hours to produce a valid specimen for test purposes. Failure to produce a valid urine specimen within the allowed timeframe will be considered as a refusal to undergo a drug test. Failure to properly submit to a BAT or blood alcohol test within the allowed timeframe will be considered a refusal to undergo the BAT or blood alcohol test.

5. CORRECTIVE ACTIONS FOR EMPLOYEES: Any employee who refuses to undergo a drug/alcohol test will be subject to immediate termination. Except as otherwise provided in this policy, an employee who tests positive for alcohol, illegal drugs, or prohibited use of prescription or over-the-counter drugs as described in this policy will be subject to disciplinary action, up to and including termination. An employee, (sic) who tests positive for the use of valid prescription or over-the-counter drugs will not be subject to disciplinary action if the test is the result of a random drug screen. If, however, the positive test is the result of a test based upon reasonable suspicion of impairment or a workplace accident/incident, disciplinary action will be imposed up to and including termination. A positive test for marijuana, even if based upon a prescription for medical purposes under Ohio law, will subject the employee to discipline under this Policy.

Exhibit B, Complaint.

{¶5}    Appellants were notified by Sterilite to appear at a specified location within the Sterilite plant to submit to a urinalysis.  Lunsford, Williamson and Griffiths were subject to a random screening.  Keim was tested under the reasonable suspicion clause of the policy and while he objected to the assertion that there was reasonable suspicion, he complied with the directive of Sterilite as did all Appellants.

{¶6}    Sterilite used what Appellants describe as a direct observation method of collecting the urine specimen for the test.  Each employee was accompanied by an individual of the same sex to a restroom facility designated by Sterilite for the exclusive purpose of collecting urine samples pursuant to the Policy.  While in the restroom, the person accompanying the Appellant was obligated to visually observe the Appellants genitals and the production of the urine sample. U.S. Healthworks completed the collection in this manner at the direction of Sterilite.

{¶7}    The direct observation procedure was disclosed to the Appellants only immediately prior to conducting the test.  Direct observation was not described in the Substance Abuse Policy maintained by Sterilite.  Appellants signed a consent and release form shortly prior to the administration of the test, but the form did not reference direct observation.

{¶8}    The Appellants had not behaved in any manner that would give Sterilite cause to believe that they would do anything to compromise the integrity of the urine sample, nor did they make any statements or take any action that might be reasonably interpreted as advocacy or threats to undermine the policy.  The Appellants did not act in a way that created a concern that they might adulterate past samples, the samples taken on that date or advocate that any other employee take such an action. Appellant Lunsford

was subject to urine tests at Sterilite prior to the tests at issue, but none used direct observation.

{¶9}   Sterilite began using the direct observation method in October 2016 and it was used for all analyses without any requirement that the employee had engaged in any behavior that might alter the outcome of the urinalysis.

{¶10} All Appellants were subject to the direct observation method of collection. Sterilite terminated Keim's and Williamson's employment because they failed to produce a urine specimen within two and one half hours, despite their good faith effort to comply with the request.  Lunsford and Griffiths were able to supply a sample, but Lunsford was particularly uncomfortable because it forced her to reveal genital scarring she suffered from a surgical procedure.   Lunsford and Griffiths are still employed by Sterilite.

{¶11} Appellants filed a complaint on December 22, 2016 alleging Invasion of Privacy, Wrongful Discharge in Violation of Public Policy, Failure to Remit Minimum Wages, Failure to Remit Wages, Breach of Contract and seeking Declaratory Judgment, Injunctive Relief, and Certification as a Class.  Appellees filed a motion to dismiss the complaint for failure to state a claim for which relief may be granted pursuant to Civ.R. 12(b)(6) and Appellants opposed the motion.  The trial court granted the motion on May 9, 2017 with regard to Count One, Invasion of Privacy; Two, Wrongful Discharge in Violation of Public Policy; Three, Declaratory Judgment regarding the Direct Observation Method; Four, Injunctive Relief regarding the Direct Observation Method, and Five, Class Action for Declaratory and Injunctive Relief.  On June 13, 2017 Appellant Williamson dismissed her claims in counts Six through Eight without prejudice. On November 27, 2017, after several pleadings involving an attempt to file an amended complaint and other

unrelated matters, Appellants dismissed counts Six through Eight and thereafter, on November 30, 2017, the trial court entered an order noting that no claims remain pending and the order of May 9, 2017 was now a final appealable order.  Appellants filed a notice of appeal on December 26, 2017 and submitted the following assignments of error:

{¶12} I. THE TRIAL COURT ERRED BY CONCLUDING, AS A MATTER OF LAW, THAT APPELLANTS FAILED TO STATE A CLAIM UPON WHICH RELIEF COULD BE GRANTED ON THEIR COMMON LAW TORT CLAIM FOR INVASION OF PRIVACY.

{¶13} II. THE TRIAL COURT ERRED WHEN IT CONCLUDED, AS A MATTER OF LAW, THAT APPELLANTS' EXECUTION OF A "CONSENT" FORM NULLIFIED ANY REASONABLE EXPECTATION OF PRIVACY THAT THEY OTHERWISE MAY HAVE CLAIMED.

{¶14} III. THE TRIAL COURT ERRED IN DISMISSING APPELLANTS' CLAIMS SEEKING DECLARATORY AND INJUNCTIVE RELIEF ARISING OUT OF THEIR EMPLOYER'S UNREASONABLE INTRUSION INTO THEIR PRIVATE AFFAIRS.

{¶15} IV. TO THE EXTENT APPELLANTS HAVE STATED A CLAIM UPON WHICH RELIEF CAN BE GRANTED UNDER COUNT THREE AND/OR COUNT FOUR OF THEIR COMPLAINT, THE TRIAL COURT ERRED IN FAILING TO ALLOW APPELLANTS TO PROCEED TO SEEK CLASS CERTIFICATION UNDER CIVIL RULE 23.

## STANDARD OF REVIEW

{¶16} Our standard of review on a Civ.R. 12(B)(6) motion to dismiss is de novo. *Greeley v. Miami Valley Maintenance Contractors, Inc.*, 49 Ohio St.3d 228, 551 N.E.2d 981 (1990), *overruled in part by Tulloh v. Goodyear Atomic Corp.*, 62 Ohio St.3d 541, 584

N.E.2d 729 (1992). A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 1992-Ohio-73, 605 N.E.2d 378 (1992). Under a de novo analysis, we must accept all factual allegations of the complaint as true and all reasonable inferences must be drawn in favor of the nonmoving party. *Byrd v. Faber,* 57 Ohio St.3d 56, 565 N.E.2d 584 (1991).

{¶17} A trial court should dismiss a complaint for failure to state a claim on which relief can be granted pursuant to Civ.R. 12(B)(6) only when it appears "beyond doubt * * * that the [plaintiff] can prove no set of facts warranting relief*." State ex rel. Crabtree v. Franklin Cty. Bd. of Health*, 77 Ohio St.3d 247,248, 1997-Ohio-274, 673 N.E.2d 1281 (1997). The court may look only to the complaint itself, and no evidence or allegation outside the complaint, when ruling on a Civ.R. 12(B)(6) motion. *State ex rel. Fuqua v. Alexander*, 79 Ohio St.3d 206, 1997-Ohio-169, 680 N.E.2d 985 (1997). Nevertheless, the court may consider material incorporated in the complaint as part of the complaint. *State ex rel. Crabtree, supra* at 249, fn. 1. Even so, because Ohio has rejected "fact pleading" in favor of "notice pleading," a plaintiff is not required to prove his or her case through the pleadings in the complaint, since the plaintiff's lack of access to relevant evidence at that stage of the proceedings would allow dismissal of many valid claims. *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 573 N.E.2d 1063 (1991).

**ANALYSIS**

{¶18} The Appellants submitted four assignments of error, but the common element and lynchpin of all the assignments is the determination of whether the Appellants have stated a claim for invasion of the right of privacy. Appellants' case will

survive or fail based upon the resolution of that issue alone.  The first assignment of error addresses that question, and the remaining assignments assume that the first assignment is decided in Appellants' favor.   If the first assignment of error is rejected, the remaining assignments are rendered moot.  However, if the first assignment of error is approved, this case must be remanded to the trial court to fully address the issues described within the remaining assignments.

> The right of privacy is the right of a person to be let alone, to be free from unwarranted publicity, and to live without unwarranted interference by the public in matters with which the public is not necessarily concerned.
>
> An actionable invasion of the right of privacy is the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities.

*Housh v. Peth*, 165 Ohio St. 35, 133 N.E.2d 340, 341 (1956), syllabus paragraphs 1 and 2.

**{¶19}** The Appellants' claims arise out of the third category described by the *Housh* court, "the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities."   Specifically, Appellants allege that the Appellees' direct observation of Appellant's genitals during collection of a urine sample is such an intrusion.

{¶20} This invasion of privacy does not rely on publication of the private information "but is akin to trespass in that it involves intrusion or prying into the plaintiff's private affairs." *Killilea v. Sears, Roebuck & Co.*, 27 Ohio App.3d 163, 166, 499 N.E.2d 1291 (10th Dist.1985). Consequently, this type of claim does not require that the Appellees took steps to expose the Appellants' private matters to the public, but only that the Appellants had a reasonable expectation of privacy regarding the subject matter and Appellees wrongfully intruded into the protected area. "In other words, there is no wrongful intrusion where there is no reasonable expectation of privacy. " *Turner v. Shahed Ents.*, 10th Dist. Franklin No. 10AP-892, 2011-Ohio-4654, ¶ 21.

{¶21} In the case at bar, Appellants claim a "special sense of privacy in their genitals," an expectation shared by most. "The desire to shield one's unclothed figure from view of strangers *** is impelled by elementary self-respect and personal dignity." *Everson v. Michigan Dept. of Corr.,* 391 F.3d 737, 757 (6th Cir.2004). We find appellants did have a reasonable expectation of privacy with regard to exposure of their genitals.

{¶22} Ohio and federal courts have concluded that requiring a urine sample from an employee and testing that sample for drugs does not implicate the employee's right of privacy, but those courts were more concerned with the requirement of providing the sample and the testing of bodily fluid and did not focus on whether the method of collection would invade the employee's right of privacy. For example, the Court in *Groves v. Goodyear Tire & Rubber Co.*, 70 Ohio App.3d 656, 661–62, 591 N.E.2d 875 (3rd Dist.1991) found that:

> [t]he courts appear to be supportive of employers' attempts to create
> a safe working environment by holding that drug-testing does not constitute

an invasion of the employees' common law right to privacy. Accordingly, we conclude that there exists no genuine issue of material fact as to whether Appellee's drug testing of Appellant constituted an actionable invasion of her right to privacy.

**{¶23}** Further, an employee consenting to a drug test waives the right to complain that his urine is collected and tested. *Id* at 660. Employees have a reduced expectation of privacy regarding production of bodily fluids and testing of the same, but these cases are of little assistance when the issue involves the manner of collection and not simply the right to collect and test the specimen.

**{¶24}** The Appellants contend that they had an expectation of privacy with regard to their bodies and that the compelled exposure of their genitals and compelled urination before a stranger intruded upon that privacy. Appellees contend the Appellants' expectation of privacy was reduced in this context such that the direct observation method did not violate the Appellants' privacy and offer citations to several cases in support of their argument. While those cases do show that an employee has a reduced expectation of privacy regarding the composition of their bodily fluids, the precedent Appellees rely upon does not address the direct observation method implemented by Appellees and whether Appellants have a reasonable expectation of privacy in this context. Contrary to Appellees assertions, we find that relevant precedent supports a clear expectation of privacy in the circumstances presented by Appellants:

Nor can it be disputed that the process of collecting the sample to be tested, which may in some cases involve visual or aural monitoring of the

act of urination, itself implicates privacy interests. As the Court of Appeals for the Fifth Circuit has stated:

> There are few activities in our society more personal or private than the passing of urine. Most people describe it by euphemisms if they talk about it at all. It is a function traditionally performed without public observation; indeed, its performance in public is generally prohibited by law as well as social custom.

*Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 617, 109 S.Ct. 1402, 1413, 103 L.Ed.2d 639 (1989).

**{¶25}** The *Skinner* Court was analyzing Fourth Amendment rights, an issue not present in the case at bar, but we cannot ignore the Court's observation regarding the privacy interests at issue and we agree that "the collection and testing of urine intrudes upon expectations of privacy that society has long recognized as reasonable." *Id* at 617.

**{¶26}** The Tenth District Court noted that Appellants have a reasonable expectation of privacy regarding their body. "What is underneath [Appellants'] clothing is private and a part of Appellant's seclusion. The intrusion upon these private matters *** would be highly offensive to a reasonable person, and, indeed, Appellant averred that those acts caused her humiliation, embarrassment, and mental distress." *Hidey v. Ohio State Hwy. Patrol,* 116 Ohio App.3d 744, 751, 689 N.E.2d 89, 93 (10th Dist.1996). The Sixth Circuit has made the expectation of privacy in this context clear:

> As one of our sister circuits has explained, most people "have a special sense of privacy in their genitals, and involuntary exposure of them

in the presence of people of the other sex may be especially demeaning and humiliating." *Lee v. Downs,* 641 F.2d 1117, 1119 (4th Cir.1981); see also *York v. Story*, 324 F.2d 450, 455 (9th Cir.1963) ("We cannot conceive of a more basic subject of privacy than the naked body. The desire to shield one's unclothed figure from view of strangers, and particularly strangers of the opposite sex, is impelled by elementary self-respect and personal dignity.").

*Everson, supra at* 757.

**{¶27}** We agree that the Appellants have a reasonable expectation of privacy with regard to the exposure of their genitals. We now turn to whether the Appellants have alleged sufficient facts to state a claim for invasion of that expectation of privacy.

**{¶28}** The Appellants contend that the method utilized by Appellees required them to urinate while a representative directly and indiscreetly observed their genitals, violated their right to privacy. Appellees respond by directing us to precedent they claim undermines the Appellants' expectation of privacy. Appellees refer to the holding of the Sixth Circuit Court of Appeals that states "even accepting the plaintiffs' contention that Eagle–Picher's urine testing program may have been intrusive and objectionable to a reasonable person, summary judgment is still appropriate." *Baggs v. Eagle-Picher Industries, Inc.*, 957 F.2d 268, 275 (6th Cir.1992). The facts of *Baggs* do not clearly include direct observation of an employee's genitals while urinating: "[m]ale employees used a urinal in the presence of a male nurse. Female employees used a stall while a female nurse stood outside." *Id* at 270. The *Baggs* Court observed that "the Michigan

Court of Appeals has held that a plaintiff may recover for an intrusion into his or her solitude when performing eliminatory functions," *Id* at 274, suggesting that Court might reach a different conclusion on the facts as alleged in the case at bar.

{¶29} In fact, in *Saldana v. Kelsey-Hayes Co.,* 178 Mich.App. 230, 234, 443 N.W.2d 382 (Mich.App.1989), one of the cases cited in *Baggs,* the court found that "[i]t may not be objectionable to peer through an open window where the curtains are not drawn, but the use of a powerful lens to observe the interior of a home or of a subterfuge to enter a home could be found objectionable to a reasonable person." The *Saldana* court determined that the plaintiff had no claim because the plaintiff did not allege facts that "show the intrusions were into matters which plaintiff had a right to keep private." *Saldana, supra* at 234. The case before us is distinctly different; the Appellants have alleged intrusions into matters they did have a right to keep private, the exposure of their bodies.

{¶30} Considering the circumstances and analysis of the courts in *Saldana* and *Baggs,* we cannot agree the holdings in those cases create the foundation for a dismissal under Civ.R. 12(b)(6) in the case at bar. Neither case addressed the expectation of the right to privacy while eliminating urine compared to the employer's legitimate interest in providing a safe and drug free work place. On the contrary, the *Baggs*' court recognition that "[t]he Michigan Court of Appeals has held that a plaintiff may recover for an intrusion into his or her solitude when performing eliminatory functions" leaves serious questions as to how Michigan Courts or the Sixth Circuit Court of Appeals would address the facts of the case at bar. *Baggs, supra* at 274.

{¶31} Appellee urges us to consider holdings in cases involving persons involved in the penal system, but those cases generally involve Fourth Amendment rights not at

issue in the case at bar.  Further, the fact that the claimants in those cases have subjected themselves to governmental supervision creates a significant distinction that lessens the relevance of the holdings. The courts in the cases cited do note that urination is generally considered a private matter and that genital exposure can be humiliating, but, in the context of a prison or post-conviction release, a requirement that intrudes upon those matters might be permitted.  The totality of the circumstances in those cases is vastly different than what is present in the case at bar.

**{¶32}**  The Appellees cite *Norris v. Premier Integrity Sols*., Inc., 641 F.3d 695, 699 (6th Cir.2011) where the plaintiff objected to direct observation of urination.  Norris asserted a Fourth Amendment claim, not a claim for violation of privacy.  The holding is further distinguished by Norris's identity as a person subject to Kentucky's Pretrial Services Monitored Conditional Release Program where he was freed from mobility restraint upon agreeing to various judicially-imposed conditions. *Id* at 696.  That Court noted that he had a severely reduced expectation of privacy as a participant in that program and cited to several supportive cases, including a Ninth Circuit decision that noted that "on the privacy side, probationers have sharply reduced liberty and privacy interests: Probation is a form of criminal punishment, so probationers do not enjoy the absolute liberty to which every citizen is entitled, " *United States v. Scott,* 450 F.3d 863, 873 (9th Cir.2006) and a United States Supreme Court Decision that held that "[t]he extent and reach of these conditions clearly demonstrate that parolees like petitioner have severely diminished expectations of privacy by virtue of their status alone," *Samson v. California*, 547 U.S. 843, 852, 126 S.Ct. 2193, 2199, 165 L.Ed.2d 250 (2006) and finally "[t]he probation condition  *** thus significantly diminished Knights' reasonable

expectation of privacy." *United States v. Knights*, 534 U.S. 112, 119–20, 122 S.Ct. 587, 591–92, 151 L.Ed.2d 497 (2001). The circumstances in *Norris* reduces its utility significantly, though we do note that the *Norris* court cited with approval the observation of the District Court that "Premier's 'direct observation' method of obtaining a urine sample is 'highly intrusive.' " *Norris, supra* at 699.

**{¶33}** The Third Circuit Court of Appeals addressed a situation involving a private employer urine test and noted that:

> If the method used to collect the urine sample fails to give due regard to the employees' privacy, it could constitute a substantial and highly offensive intrusion upon seclusion. See *Mark A. Rothstein, Drug Testing in the Workplace: The Challenge to Employment Relations and Employment Law*, 63 Chi–Kent L Rev 683, 729 (1987) (public policy exception to employment-at-will doctrine most likely to be applied when employer requires direct observation of urination). See also *Kelley v. Schlumberger Technology Corp.*, 849 F.2d 41 (1st Cir.1988) (upholding jury verdict that employer's urinalysis program involving direct observation of urination invaded common-law right of privacy under Louisiana law).

*Borse v. Piece Goods Shop, Inc.,* 963 F.2d 611, 621 (3d Cir.1992), as amended (May 29, 1992).

**{¶34}** While not binding on this Court, the holding of *Borse* provides some insight on limitations of the employers ability to use intrusive and objectionable means to obtain a urine sample and whether employers should face legal consequences for failure to give due consideration to the employees right of privacy when establishing a method for

collection. The Supreme Court of Ohio addressed an analogous situation in *Housh* when it examined the means used by a collection company to collect a debt and held that while the company had a right to collect the debt, the Court would impose limits to its ability to invade the debtor's right of privacy. The Court found that "In our opinion the conduct of the defendant falls outside the bounds of reasonable methods which may be pursued in an effort to collect a debt, and is actionable as an invasion of plaintiff's right of privacy." *Housh, supra* at 41. We read the holding in *Housh* as applied in this context to mean that an employer may use reasonable means to accomplish its goal of providing a safe and drug free workplace, including the collection and testing of bodily fluids. However, just as in *Housh,* we cannot state there can never be a method of collection of bodily fluids that would fall "outside the bounds of reasonable methods which may be pursued" and that, therefore "is actionable as an invasion of plaintiff's right of privacy." *Id.*

**{¶35}** The trial court does not include in its analysis of precedent the *Housh* directive to consider the reasonableness of the intrusion, but the cases cited by the trial court recognize similar limitations on the method of collecting urine specimens. The trial court relies upon *Vernonia School Dist. 47J v. Acton,* 515 U.S. 646, 658, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995) for "a reduced expectation of privacy and a compelling interest advanced by random, suspicionless drug testing of high school students, which was also administered in a monitored setting (albeit perhaps less directly observed than what is alleged here)."(Judgment Entry, May 9, 2017, P. 5). We find the distinction between the two cases to be more striking than what is noted by the trial court. In *Vernonia School Dist. 47J* the Court noted that "These conditions are nearly identical to those typically encountered in public restrooms, which men, women, and especially schoolchildren use

daily. Under such conditions, the privacy interests compromised by the process of obtaining the urine sample are in our view negligible." *Id.* at 657. We cannot agree that the United States Supreme Court would arrive at the same conclusion should it be presented with the facts that are described in Appellants' complaint in the case at bar, namely the direct observation of the Appellant's genitals. The Appellants' allegations present a picture that is very different from conditions typically encountered in public restrooms.

**{¶36}** A similar distinction can be made with regard to another case cited by Appellee and the trial court, *Wilcher v. City of Wilmington*, 139 F.3d 366 (3d Cir.1998). In that case, the plaintiffs claimed that direct observation of their genitals occurred during the collection of the urine specimen. The Third Circuit noted that:

> The firefighters claim that monitors looked at their genitalia as they urinated. SODAT and its employees, on the other hand, steadfastly maintain that they did not focus on the firefighters' genitalia during the urine collection process. Instead, they claim that they looked in the firefighters' general direction to ensure that no tampering was taking place during the production of the urine specimen.
>
> ***
>
> In light of the nature of the testimony from the SODAT employees, which the trial judge chose to credit, we cannot say that the district court's finding was clearly erroneous. Consequently, we will adopt the **district**

**court's description of the SODAT procedure as one which entails only**

**incidental observation of a firefighters' genitals**.

*Wilcher* at 375 (Emphasis added).

**{¶37}** The Third Circuit decided it was important to investigate the details regarding the method of collection and the level of intrusion into the firefighters privacy caused by that method. The court found only incidental observation of genitals and, therefore, found no invasion of privacy. With regard to female firefighters, the court agreed that ", the facts of this case suggest that SODAT took substantial measures to minimize the intrusion of privacy to female firefighters caused by the direct observation procedure" and that "the monitors did not look at the firefighters genitalia as the urinated, but rather in their general direction." *Id. at* 377.

**{¶38}** Both the United States Supreme Court and the Third Circuit Court of Appeals determined that the method utilized during direct observation was an important issue and both determined there was only incidental observation of genitals. The fact that both courts felt it important to reach that conclusion suggests that a different conclusion may be reached under different facts and, therefore, we cannot agree that the decisions in *Vernonia School Dist. 47J* and *Wilcher* provide an answer which should lead to the dismissal of the complaint for failure to state a claim.

**{¶39}** In the case before us, we are not called to determine whether direct observation of urine collection is justified or reasonable considering the circumstances. We consider justification and reasonableness to be factual issues that must not be decided in the context of a motion to dismiss for failure to state a claim. If this case was solely focused upon whether the employer invades an employee's privacy by requiring

the employee to produce a sample of bodily fluids, such as urine, for appropriate testing, we would agree that issue has been resolved. Requiring the production of a specimen and consent to a test would not likely be an invasion of privacy. However, the focus of the Appellant in this case is not the fact of the production of the sample and the subsequent test, but the means of collection. To the extent the Appellant is challenging the direct observation method, the precedent Appellees rely upon is unhelpful as it does not address the method.

{¶40} The Southern District of New York considered a case regarding direct observation in the context of a claims of a violation of the Fourth Amendment and, while that case focused on a different basis for the challenge to the testing procedure, the courts characterization of the collection process is helpful:

> I find urinalysis analogous to a blood test. Although it involves no forced penetration of body tissues, as does a blood test, it does involve the involuntary extraction of body fluids. In that sense, if not literally, it is an "intrusion beyond the body's surface." *Schmerber,* 384 U.S. at 769, 86 S.Ct. at 1835. Further, the "interests in human dignity and privacy," *id.,* at 769–770, 86 S.Ct. at 1835–36, which concerned Justice Brennan in *Schmerber* are plainly implicated when an inmate is forced to perform in the presence of a prison guard what is ordinarily regarded as a private bodily function. In a way in which having blood extracted could never be, being forced under threat of punishment to urinate into a bottle held by another is purely and simply degrading.

*Storms v. Coughlin*, 600 F.Supp. 1214, 1218 (S.D.N.Y.1984)

{¶41} One of the few cases that addressed the issue of direct observation of urine collection decided in favor of the plaintiff. "Direct observation of employees urinating was *** at the core of the plaintiff's complaint." *Kelley v. Schlumberger Technology Corp.*, 849 F.2d 41, 43 (1st Cir.1988). "During the trial [plaintiff] described himself as being "disgusted by the whole idea of someone being paid to look at [his] penis while [he] urinated." *Kelley, Id.* The trial court found for the plaintiff in that case and the appellate court affirmed, despite an argument by the defendant that the circumstances warranted the direct observation method.

{¶42} The precedent offered by Appellees in support of the conclusion that a general requirement that an employee provide a specimen for testing is not an invasion of privacy are not helpful in this context. Appellants complain of direct observation of an employee while the employee provides a urine sample, not the production of the specimen or the conduct of the test. Appellants alleged that "In the course of gathering specimens in this fashion, each employee was required to bare his or her genitals in the presence of the U.S. Healthworks monitor and to endeavor to produce a urine specimen while such monitor kept his or her eyes fixed on the employee's groin area." (Complaint, ¶ 9). The Appellant also claims "The "direct observation" process designated by the Employer and followed by U.S. Healthworks in collecting urine specimens in administering the Employer's drug screening program was highly offensive to a person of ordinary sensibilities" (Complaint, ¶ 10) and that "[t]he acts of the Employer and U.S. Healthworks, as alleged in Paragraphs 6 through 8 of this complaint, constituted an invasion into the private activities of each of the plaintiffs of a nature highly offensive to an ordinary person and in such a manner as to outrage or cause mental suffering, shame,

or humiliation to a person of ordinary sensibilities." (Complaint, ¶ 27). Finally, Appellants do contend Appellees' acts were wrongful. (Complaint, ¶ 28-29).

**{¶43}** Appellants have stated a valid claim for invasion of privacy pursuant to the requirement of the Supreme Court of Ohio in *Housh v. Peth,* 165 Ohio St. 35, 133 N.E.2d 340, 341 (1956)*.* We cannot agree that there is no set of facts upon which the Appellants may recover. Both Appellees and the trial court rely upon case law that does not foreclose the possibility that the method of collection of a urine sample could comprise a violation of the Appellants' right to privacy. We conclude that Appellants have stated a valid claim and that dismissal for failure to state a claim was not supported by a review of the pleadings and the attachments.

**{¶44}** Because the remaining assignments of error have at their foundation the claims of invasion of privacy, because the complaint was dismissed for failure to state a claim of invasion of privacy and because we find that decision in error, consideration of the remaining assignments of error at this junction would be premature.

**{¶45}** For the forgoing reasons, the decision of the Stark County Court of Common Pleas is reversed, the judgment vacated and the matter remanded to the trial court for further proceedings consistent with this opinion.

By: Baldwin, J.

Gwin, P.J. and

Hoffman, J. concur.