[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Lunsford v. Sterilite of Ohio, L.L.C.*, Slip Opinion No. 2020-Ohio-4193.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-4193

LUNSFORD ET AL., APPELLEES, *v*. STERILITE OF OHIO, L.L.C., ET AL, APPELLANTS.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Lunsford v. Sterilite of Ohio, L.L.C.*, Slip Opinion No. 2020-Ohio-4193.]

*Torts—Employment law—Invasion of privacy—When an at-will employee consents, without objection, to the collection of the employee's urine sample under the direct-observation method, the at-will employee has no cause of action for invasion of privacy—Court of appeals' judgment reversed and common pleas court's judgment reinstated.*

(No. 2018-1431—Submitted January 28, 2020—Decided August 26, 2020.)

APPEAL from the Court of Appeals for Stark County, No. 2017CA00232, 2018-Ohio-3437.

_____

**KENNEDY, J.**

{¶ 1} In this discretionary appeal from a judgment of the Fifth District Court of Appeals, we consider whether an at-will employee has a cause of action for common-law invasion of privacy as a result of his or her private employer's implementation of a workplace substance-abuse policy requiring the employee to submit a urine sample for drug testing under the "direct-observation method." For the reasons set forth below, we conclude that when an at-will employee consents, without objection, to the collection of his or her urine sample under the direct-observation method, the at-will employee has no cause of action for common-law invasion of privacy. Therefore, we reverse the judgment of the court of appeals and reinstate the judgment of the trial court.

## FACTS AND PROCEDURAL HISTORY

{¶ 2} The complaint alleges that appellees Adam Keim and Laura Williamson are former at-will employees of appellant, Sterilite of Ohio, L.L.C. Appellees Donna L. Lunsford and Peter D. Griffiths are current at-will employees of Sterilite.

{¶ 3} Sterilite, a private company, has a workplace substance-abuse policy that applies to all its employees, and compliance with the policy is a condition of employment. The purpose of the policy is to "promote a healthy, safe and productive workplace for all employees." The policy reserves to Sterilite the discretion to change the policy at any time.

{¶ 4} The policy sets out three circumstances under which Sterilite may exercise its discretion to require an employee to submit to drug testing: while investigating a workplace accident or incident, when there is reasonable suspicion that an employee may be impaired by drugs or alcohol, and randomly at periodic intervals. The policy also provides that urinalysis will be used to test for an employee's illegal use of drugs or improper use of prescription or over-the-counter drugs, but it is silent on how the urine sample will be collected.

{¶ 5} Under the policy, a supervisor informs an employee when and where he or she is to report for testing. If the employee does not produce a valid urine sample within two and a half hours, the employee will be considered to have refused to take the test. An employee who refuses to take the test is subject to immediate termination. An employee whose urine sample tests positive for illegal drugs or prohibited use of prescription or over-the-counter drugs is subject to disciplinary action, up to and including termination.

{¶ 6} Appellant U.S. Healthworks Medical Group of Ohio, Inc., administers Sterilite's workplace drug-testing program. To facilitate drug testing under the policy, Sterilite designated a restroom to be used exclusively for the collection of urine samples. According to appellees' complaint, U.S. Healthworks began collecting urine samples for drug testing by the "direct-observation method" in October 2016. Under that method, a same-sex monitor was required to accompany the employee to the restroom to visually observe the employee produce the urine sample.

{¶ 7} Lunsford, Williamson, and Griffiths were selected by Sterilite for random drug testing on October 4 and 12 and November 8, 2016, respectively. Keim was asked to submit to drug testing based on the policy's reasonable-suspicion-of-impairment provision on October 9, 2016. When appellees were instructed by their respective supervisors to report to the restroom designated by Sterilite for drug testing, each complied.

{¶ 8} At the beginning of the testing process, each appellee executed a statement titled "Consent and Release" ("consent form") provided by U.S. Healthworks. The consent form provided:

> I hereby give my consent to and authorize U.S. Healthworks staff
> and its designated laboratory to perform any testing necessary to
> determine the presence and/or level of drugs in my body on behalf

of my * * * current employer, whose name I entered above. I further give my consent for U.S. Healthworks to release any and all results to the aforementioned employer. I agree to hold harmless all U.S. Healthworks employees, physicians, and agents involved in the performance of the testing, from any action that may arise from the disclosure of such test results to the aforementioned employer * * *.

{¶ 9} Appellees did not know at the time they executed the consent form that his or her urine sample would be collected under the direct-observation method. None of the appellees had previously submitted a urine sample under the direct observation-method. Appellees were notified that the direct-observation method would be used when they reported to the restroom designated exclusively for urine collection.

{¶ 10} Appellees each proceeded with the drug test under the direct-observation method without objection. Lunsford and Griffiths were each able to produce a valid urine sample. Keim and Williamson alleged in the complaint that they each made "good faith efforts" to produce a valid urine sample but were unable to do so within two and a half hours. Sterilite terminated Keim's and Williamson's employment pursuant to the policy.

{¶ 11} Appellees filed in the Stark County Court of Common Pleas an eight-count complaint against appellants on December 22, 2016. At issue here is Count One of appellees' complaint, which alleged that Sterilite and U.S. Healthworks invaded appellees' privacy by requiring them to submit their urine samples under the direct-observation method. Appellees incorporated the policy into their complaint.

{¶ 12} Appellees argued that Ohio law recognizes an individual's right to privacy and to freedom from unreasonable invasion of one's privacy. Appellees contended that because the direct-observation method is so "highly offensive to a

person of ordinary sensibilities," Ohio's courts should balance the intrusion of the direct-observation method against the employer's legitimate business interests in conducting drug testing by that method. And if the intrusion outweighs the employer's interests in conducting drug testing by that method, then the employer should be liable for invasion of privacy.

{¶ 13} In support of their arguments, appellees cited guidelines limiting the use of the direct-observation method published by the United States Department of Agriculture ("USDA"), the United States Department of Health and Human Services ("USDHHS"), and the United States Department of Transportation ("USDOT") that were promulgated following an executive order of the President of the United States and acts of the United States Congress (i.e., when the employee's prior drug-test results were reported to be positive for drugs, adulterated, or substituted; or a specimen was invalid without an adequate medical explanation; or when the temperature of the collected specimen was outside the acceptable range, the employee's conduct indicated possible  adulteration or substitution of the specimen, or the specimen exhibited signs that it was tampered with during collection).

{¶ 14} Sterilite filed a motion to dismiss on January 17, 2017. U.S. Healthworks filed a motion to dismiss on February 21, 2017. The trial court granted appellants' motions to dismiss on May 9, 2017, determining that the crux of appellees' invasion-of-privacy claim is that Sterilite's substance-abuse policy authorizes the collection of urine samples through the direct-observation method "without requiring evidence, or a reasonable basis to suspect, that a particular employee is likely to taint, tamper with, or otherwise compromise the integrity" of the sample. The trial court accepted appellees' factual allegations as true. The trial court noted that appellees had acknowledged that Ohio employees have no actionable invasion-of-privacy claim based on an employer's implementation of "random and suspicionless drug screening" as part of its workplace substance-

abuse policy. It also noted that as support for the invasion-of privacy-claim, appellees relied on the federal guidelines regarding the use of the direct-observation method that had been published by the USDA, USDHHS, and USDOT. But it determined that the policies of government entities are inapplicable because appellants are private companies and there is no state actor involved in this case. It further determined that Ohio does not recognize an invasion-of-privacy claim by an at-will employee based solely on an employer's use of the direct-observation method during drug testing, particularly when the at-will employee agreed to be tested as a condition of employment.

{¶ 15} The Fifth District reversed, holding that appellees had stated a valid claim for invasion of privacy pursuant to this court's decision in *Housh v. Peth*, 165 Ohio St. 35, 133 N.E.2d 340 (1956). 2018-Ohio-3437, ¶ 43. In reaching that conclusion, the court of appeals determined that appellees have a "reasonable expectation of privacy with regard to the exposure of their genitals." *Id*. at ¶ 27. After finding no binding precedent on the direct-observation method, the court of appeals examined caselaw from other Ohio appellate districts, other states, federal circuit courts, and the United States Supreme Court, including cases considering claims involving alleged Fourth Amendment privacy violations. *Id*. at ¶ 28-43.

{¶ 16} Sterilite and U.S. Healthworks appealed to this court. We accepted for review the following proposition of law submitted by Sterilite:

> Employees of a private employer in the State of Ohio do not have a reasonable expectation of privacy in whether they are reporting to work under the influence of drugs, or whether they are cheating on a drug test. Absent allegations that the manner of testing used by a private employer to obtain this information is not job-related and consistent with business necessity, an at-will employee

6

cannot maintain an action against [his or] her employer for invasion of privacy.

*See* 154 Ohio St.3d 1463, 2018-Ohio-5209, 114 N.E.3d 214.  And we accepted for review the following two propositions of law submitted by U.S. Healthworks:

Requiring employees to provide a monitored urine sample to independent laboratory personnel as part of an employer's random drug testing policy does not constitute an invasion of the employees' common law right to privacy as a matter of law.

* * *

Ohio law does not recognize a cause of action for invasion of privacy against independent third-party laboratories or their trained staff who are hired to collect and test urine samples as part of a drug testing policy between an employer and employee by the direct observation method of collection when the employee signs a consent authorizing any testing necessary to determine the presence or level of drugs.

*See id.*

**ARGUMENTS OF THE PARTIES**

{¶ 17} Because we resolve this matter by addressing U.S. Healthworks' second proposition of law, we decline to address Sterilite's proposition of law and U.S. Healthworks' first proposition of law.

{¶ 18} Sterilite argues that appellees' status as former or current at-will employees is fatal to their invasion-of-privacy claim.  It contends that appellees' compliance with the substance-abuse policy was a condition of their employment

and their consent to drug testing and lack of objection to the use of the direct-observation method negates their claim.

{¶ 19} U.S. Healthworks agrees with Sterilite that appellees' consent and voluntary participation in the drug-testing program negates their claim. It notes that appellees signed a consent form and were advised that the direct-observation method would be used to collect their urine samples and that each appellee proceeded to take the test. It further notes that two appellees produced valid urine samples and that the other two appellees made what they have deemed "good faith efforts" to produce valid urine samples.

{¶ 20} Appellees concede that they were or are at-will employees and that Sterilite's substance-abuse policy is justified. Nevertheless, appellees argue that no employee should be expected to completely relinquish his or her right to privacy so that an employer can conduct drug testing in any manner the employer chooses and that the direct-observation method of urine collection crosses the line of what is acceptable in the right-to-privacy context.

{¶ 21} Appellees deny that they consented to be tested under the direct-observation method and advance two arguments in support of that contention. First, appellees argue that appellants have construed the language in the consent form too expansively. Appellees argue that they gave consent to U.S. Healthworks to test their urine samples and to release the results of their tests to Sterilite. But appellees argue that they did not consent to the use of the direct-observation method. Appellees note that they learned about the use of the direct-observation method after they signed the consent form when they reported for drug testing. Second, appellees argue that their submission to be tested under the direct-observation method was involuntary. The alternative to complying was to be ushered out the door with a "pink slip" in hand.

**LAW AND ANALYSIS**

*Standard of review*

{¶ 22} "An order granting a Civ.R. 12(B)(6) motion to dismiss is subject to de novo review." *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5. In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, we accept as true all factual allegations in the complaint. *Mitchell v. Lawson Milk Co*., 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988). A complaint should not be dismissed unless it appears "beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." *O'Brien v. Univ. Community Tenants Union, Inc*., 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus.

{¶ 23} This case places two common-law principles—the doctrine of employment at will and the tort of invasion of privacy—in competition with each other. The fundamental principle of appellees' argument is that the employment-at-will doctrine must yield to an employee's right to privacy. Therefore, in appellees' view, the common-law right to privacy enhances their rights under the employment-at-will doctrine and diminishes their employer's rights under the doctrine. However,

> "[i]n determining the extent of the right of privacy, it is essential to consider it in the light of duties imposed on individuals as citizens of a free country and in the light of an individual's relation to the community of which he is a member, and such right does not extend so far as to subvert those rights which spring from social conditions, including business relations."

*Earp v. Detroit*, 16 Mich.App. 271, 276, 167 N.W.2d 841 (1969), quoting 77 Corpus Juris Secundum, Right of Privacy, Section 3, at 401-402.

{¶ 24} Therefore, because the right to privacy must be considered within the context of other rights and because Sterilite argues that appellees' status as at-will employees is fatal to their claim, we begin by considering the underpinnings of the employment-at-will doctrine.

*Employment-at-will doctrine*

{¶ 25} Ohio has long recognized the employment-at-will doctrine. *See La France Elec. Constr. Supply Co. v. Internatl. Bhd. of Elec. Workers, Local No. 8*, 108 Ohio St. 61, 140 N.E. 899 (1923), syllabus. Either party to an at-will employment contract—employer or employee—can terminate the employment relationship for "any reason which is not contrary to law." *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 103, 483 N.E.2d 150 (1985). And either party to an at-will employment contract can propose changes to the terms of their employment relationship at any time. *Lake Land Emp. Group of Akron, L.L.C. v. Columber*, 101 Ohio St.3d 242, 2004-Ohio-786, 804 N.E.2d 27, ¶ 18. As illustrated by the court in *Lake Land*:

> If, for instance, an employer notifies an employee that the employee's compensation will be reduced, the employee's remedy, if dissatisfied, is to quit. Similarly, if the employee proposes to the employer that he deserves a raise and will no longer work at his current rate, the employer may either negotiate an increase or accept the loss of his employee.

*Id.*

{¶ 26} However, the at-will-employment relationship is not without its limits. For example, legislative bodies have enacted laws prohibiting retaliatory discharge when an injured worker files a workers' compensation claim or engages in union activities and prohibiting discrimination on the basis of age, sex, race, or

disability. *Mers* at 103. And this court has recognized other exceptions to the at-will-employment doctrine, including actions involving promissory estoppel and breach of an implied contract. *Id*. at paragraphs two and three of the syllabus.

{¶ 27} The extent of appellees' privacy rights must be construed within the context of their status as at-will employees. Appellees concede that their employment was or is conditioned on their compliance with Sterilite's workplace substance-abuse policy. But Sterilite's substance-abuse policy and its conditioning appellees' employment on their compliance with the policy is not the crux of this controversy. It is the manner in which the policy was carried out—the use of the direct-observation method during the collection of the urine sample—that is the core of this controversy. Therefore, we turn to the common-law tort of invasion of privacy.

*Invasion of privacy*

{¶ 28} The heart of appellees' argument is that absent just cause—which could include an employee's past positive drug test or evidence or reasonable suspicion of urine-sample tampering or adulteration, or the employee's express consent—an at-will employer may not use what it calls the "highly offensive" direct-observation method to administer a workplace substance-abuse policy. To say it another way, an employer that without just cause uses the "highly offensive" direct-observation method for collecting a urine sample creates an actionable invasion-of-privacy claim by the employee.

{¶ 29} Appellees' argument does not originate from the Ohio Constitution or the Revised Code. Appellees urge this court to not immunize at-will employers from invasion-of-privacy claims "just because other judge-made rules" have given employers the "privilege" to perform workplace substance-abuse testing. Appellees assert that at-will employers should not have "unfettered discretion" in choosing the method of urine collection.

{¶ 30} Appellees argue that this court should apply our decision in *Housh*, 165 Ohio St. 35, 133 N.E.2d 340, which appellees believe would strike the right balance between the competing interests of an employer administering a workplace substance-abuse policy and the privacy rights of the employees subject to the policy. And they urge this court to follow the decision in *Wilcher v. Wilmington*, 139 F.3d 366 (3rd Cir.1998), and to endorse the drug-testing protocols at issue in *Wilkinson v. Times Mirror Corp.*, 215 Cal.App.3d 1034, 264 Cal.Rptr. 194 (1989), which would limit the use of the "highly offensive" direct-observation method to situations in which its use is justified.

{¶ 31} We dispense quickly with appellees' arguments based on the decisions in *Wilcher* and *Wilkinson* because the facts and law involved in those cases are easily distinguishable from the facts and law involved in this case. *Wilcher* involved a public employer and a Fourth Amendment challenge to the government's use of the direct-observation method. *Wilcher* at 373. *Wilkinson*, while involving a private employer, involved a privacy challenge under an express provision of the California Constitution and an unfair-business-practice challenge under the California Business and Professions Code. *Wilkinson* at 1039. Sterilite, however, is a private company and is not a state actor. There is no Fourth Amendment challenge before us here, no provision of the Ohio Constitution has been implicated, and there is no Ohio statute underpinning appellees' invasion-of-privacy claim. Our review of appellees' invasion-of-privacy claim is limited to their arguments based on the common-law right to privacy.

{¶ 32} We first recognized the common-law right to privacy in *Housh* at paragraph one of the syllabus. To be actionable, the invasion of privacy must involve "the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary

sensibilities." *Id*. at paragraph two of the syllabus. Appellees' claim is based on the third right-to-privacy violation recognized in *Housh*—the wrongful intrusion into one's private activities—which has also been called "intrusion upon seclusion."

{¶ 33} "Intrusion upon seclusion" is based on the "right to be left alone." *People for Ethical Treatment of Animals v. Bobby Berosini, Ltd.*, 111 Nev. 615, 630, 895 P.2d 1269 (1995). It is "akin to trespass in that it involves intrusion or prying into the plaintiff's private affairs." *Killilea v. Sears, Roebuck & Co.*, 27 Ohio App.3d 163, 166, 499 N.E.2d 1291 (10th Dist.1985). " 'One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.' " *Sustin v. Fee*, 69 Ohio St.2d 143, 145, 431 N.E.2d 992 (1982), quoting Restatement of the Law 2d, Torts, Section 652B (1977). Whether an invasion of privacy has occurred turns on the particular facts of the case. *See Kane v. Quigley*, 1 Ohio St.2d 1, 3-4, 203 N.E.2d 338 (1964). However, the right to privacy is not absolute. *Earp*, 16 Mich.App. at 276, 167 N.W.2d 841.

{¶ 34} When considering a motion to dismiss for failure to state a claim upon which relief can be granted, a court construes all factual allegations in the complaint as true, *Mitchell*, 40 Ohio St.3d at 192, 532 N.E.2d 753, and can grant the motion when it appears beyond doubt that the plaintiff can prove no set of facts entitling him to recovery, *O'Brien*, 42 Ohio St.2d at 245, 327 N.E.2d 753. In order for appellees to have properly survived appellants' motions to dismiss, appellees' complaint must have demonstrated (1) that there was an intrusion by appellants into a matter (2) that appellees had a right to keep private and (3) that the method of the intrusion would be considered highly offensive to a reasonable person. *Sustin*, 69 Ohio St.2d at 145, 431 N.E.2d 992.

{¶ 35} In *Skinner v. Ry. Labor Executives' Assn.*, 489 U.S. 602, 626-627, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989), the United States Supreme Court recognized that urine tests are not invasive of the body, but "procedures for collecting the necessary samples, which require employees to perform an excretory function traditionally shielded by great privacy, raise concerns." And in cases in which the collection of the sample to be tested "involve visual or aural monitoring of the act of urination," privacy interests are implicated. *Id*. at 617.

{¶ 36} While we recognize that workplace drug-testing policies implicate employees' privacy interests, we find as a matter of law that the facts alleged in appellees' complaint cannot sustain their common-law invasion-of-privacy claim. Despite their assertions that they did not consent to drug testing using the direct-observation method, the facts in the complaint demonstrate appellees did consent to the use of the direct-observation method.

{¶ 37} Consent is generally an absolute defense to an invasion-of-privacy claim. *See* Restatement of the Law 3d, Employment, Section 7.06, comment h (2015), citing Restatement of the Law 2d, Torts, Section 892A(1) (1979) ("One who effectively consents to conduct of another intended to invade his interests cannot recover in an action of tort for the conduct or for harm resulting from it"); s*ee also Baugh v. CBS, Inc.*, 828 F.Supp. 745, 757 (N.D.Cal. 1993). An employee who consents to drug testing cannot claim that the testing was highly offensive and invaded his or her right to privacy. *Luedtke v. Nabors Alaska Drilling, Inc*., 768 P.2d 1123, 1137-1138 (Alaska 1989) (employee could not validly complain that drug testing was "highly offensive" when he voluntarily supplied urine sample); *Jennings v. Minco Technology Labs, Inc*., 765 S.W.2d 497, 500 (Tex.Civ.App. 1989) (drug testing is not a tortious invasion of privacy when employee consents to testing).

{¶ 38} Sterilite's substance-abuse policy was premised on the employees' consent, which is "the central element of the right of privacy and its attendant public

policy: the individual's exclusive right to determine the occasion, extent, and conditions under which [the individual] will disclose his [or her] private affairs to others." *Jennings* at 502.

{¶ 39} Appellees argue that appellants have read the consent form too expansively. The consent form is limited by its plain language. As written, the form covers the *testing* of appellees' urine for the presence of drugs and authorizes U.S. Healthworks to release those results to Sterilite. But, the limitation of the language of the consent form, which does not include that the direct-observation method will be used, does not change the outcome here.

{¶ 40} However, when appellees individually reported for the collection of their urine samples, they were advised by the same-sex monitor that the direct-observation method would be used. At that time appellees had a second opportunity—consent or refuse—and appellees consented by their action.

{¶ 41} Lunsford and Griffiths produced valid urine samples. Keim and Williamson alleged that they made "good faith efforts" to produce valid samples. Their choice of the words "good faith efforts" establishes that they did not refuse to provide a urine sample, but consented and were unable to produce a urine sample within the time frame of the policy. Appellees' consent to take the test by the direct-observation method was therefore not borne by their actions in executing the consent form, but by their actions in taking the test under the direct-observation method. "Consent is the willingness in fact for the conduct to occur. It may be manifested by action." Restatement of the Law 2d, Torts, Section 892 (1979).

{¶ 42} Appellees argue that their production of valid urine samples or "good faith efforts" to produce valid urine samples were not voluntary because their refusal would have been grounds for immediate termination. A fundamental principle of Ohio's employment-at-will doctrine is that any party to an employment-at-will relationship may terminate the relationship for "any reason which is not contrary to law." *Mers*, 19 Ohio St.3d 100 at 103, 483 N.E.2d 150.

And Sterlite had the right to condition employment on consent to drug testing under the direct-observation method, appellees had the right to refuse to submit to the direct-observation method, and because appellees were at-will employees, Sterilite had the right to terminate their employment for their failure to submit. Because Sterilite had the legal right to terminate appellees' employment at any time, appellees' argument that their consent was involuntary because of their fear of termination necessarily fails.

{¶ 43} When reviewing a motion to dismiss for failure to state a claim, courts construe all factual allegations in the complaint as true and should grant the motion when it appears beyond doubt that the plaintiff can prove no facts entitling him to recovery. We are required to accept as true the factual allegations in the complaint, but we are not required to accept legal conclusions alleged in the complaint. *See Mitchell*, 40 Ohio St.3d at 193, 532 N.E.2d 753. Appellees can prove no set of facts entitling them to recovery. On the face of the complaint, appellees consented, without objection, to the collection of their urine samples under the direct-observation method. *See Stein v. Davidson Hotel Co.*, Tenn. App. No. 01-A-01-9509-CV-00407, 1996 WL 230196, *9 (May 8, 1996), *aff'd on other grounds*, 945 S.W.2d 714 (Tenn.1997) (affirming trial court's grant of employer's motion to dismiss for failure to state a claim for invasion of privacy because plaintiff's complaint contained "no allegations that the [plaintiff] objected to the test when asked to sign the [consent and release] form or when selected for the test."). The trial court correctly granted appellants' motion to dismiss appellees' invasion-of-privacy claim for failure to state a claim upon which relief can be granted.

**CONCLUSION**

{¶ 44} When an at-will employee consents, without objection, to the collection of the employee's urine sample under the direct-observation method, the at-will employee has no cause of action for common-law invasion of privacy.

Therefore, we reverse the judgment of the Fifth District and reinstate the judgment of the trial court.

Judgment reversed.

FRENCH, FISCHER, and DEWINE, JJ., concur.

STEWART, J., dissents, with an opinion joined by O'CONNOR, C.J., and DONNELLY, J.

_____

**STEWART, J., dissenting.**

{¶ 45} Appellant Sterilite of Ohio, L.L.C., ordered appellees, Donna L. Lunsford, Adam Keim, Laura Williamson, and Peter D. Griffiths, to each produce a urine sample while a monitor employed by appellant U.S. Healthworks Medical Group of Ohio, Inc., the administrator of Sterilite's workplace drug-testing program, directly observed appellees' genitalia or else appellees would be terminated. Appellees claimed in their complaint that this "direct-observation method" of supervising the production of a urine sample violated their right to privacy.

{¶ 46} The majority opinion rejects appellees' invasion-of-privacy cause of action on the grounds that appellees had consented to the use of the direct-observation method by either producing or trying to produce their urine samples while being directly observed and that appellees did not submit to direct observation under duress because they were at-will employees that Sterilite could have terminated at any time.

{¶ 47} Whether appellees have an invasion-of-privacy cause of action against appellants has nothing to do with their status as at-will employees. An at-will-employment relationship does not allow an employer to commit intentional torts against its employees. And appellees' complaint stated sufficient facts to show that Sterilite coerced appellees to submit to the humiliation of having their genitalia directly observed as each of them produced or attempted to produce a urine sample.

Because I find that appellees' complaint states a claim for invasion of privacy sufficient to defeat a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted, I dissent.

*Invasion of Privacy*

**{¶ 48}** To be clear, appellees did not object to being drug tested by Sterilite. Rather, their invasion-of-privacy claim is based on Sterilite's drug-testing procedure, which required them to expose their genitalia to a stranger while they provided or attempted to provide their urine samples. This procedure, they allege, is so humiliating to a person of normal sensibilities as to constitute an invasion of privacy.

**{¶ 49}** Invasion of the right to privacy is part of the "dignitary" torts— actions that inflict an injury upon one's reputation or honor. Although the earliest cases alleging invasion of privacy premised relief upon some form of physical trespass, "later commentators shared the view that an insult to dignity necessitated a remedy in tort to vindicate the attack on the inner self." Makdisi, *Genetic Privacy: New Intrusion a New Tort?*, 34 Creighton L.Rev. 965, 980-981 (2001). Thus, the tort of invasion of privacy protects a person's interest in "personal dignity and self-respect." Harper & McNeely, *A Re-Examination of the Basis for Liability for Emotional Distress*, 1938 Wis.L.Rev. 426, 451 (1938).

**{¶ 50}** We long ago embraced the personal-dignity aspect of the right to privacy. For example, in *Housh v. Peth*, 165 Ohio St. 35, 133 N.E.2d 340 (1956), paragraph two of the syllabus, we recognized that among those actions amounting to an invasion of privacy are "wrongful intrusion[s] into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." We characterized the tort as a "salutary and progressive principle of law." *Id.* at 39.

**{¶ 51}** In private-sector employment, random drug testing through urine testing infringes upon an employee's right to privacy in at least two ways: the

18

collection of the urine sample itself and the intrusion into areas of the employee's private life that would otherwise remain unknown to the employer. *See Skinner v. Ry. Labor Executives' Assn.*, 489 U.S. 602, 616-617, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989); *Borse v. Piece Goods Shop, Inc.*, 963 F.2d 611, 622-623 (3d Cir.1992); *Baggs v. Eagle-Picher Industries, Inc.*, 957 F.2d 268, 274 (6th Cir.1991). We should thus determine the degree of an employer's harm to an employee's right to privacy by evaluating the employee's subjective expectation of privacy and whether it is objectively reasonable, the offensiveness of the invasion, the legitimacy of the reason behind the policy, and the existence of reasonable, less invasive alternatives. Fisk, *Privacy, Power, and Humiliation at Work: Re-Examining Appearance Regulation as an Invasion of Privacy*, 66 La.L.Rev. 1111, 1126-1127 (2006). In other words, the individual's legitimate expectation of privacy must be balanced against the employer's need to conduct drug testing in the manner it chooses.

{¶ 52} Sterilite's use of the direct-observation method to collect appellees' urine samples was a highly intrusive invasion into a matter that appellees had a right to keep private. " 'There are few activities in our society more personal or private than the passing of urine. Most people describe it by euphemisms if they talk about it at all. It is a function traditionally performed without public observation; indeed, its performance in public is generally prohibited by law as well as social custom.' " *Skinner* at 617, quoting *Treasury Emps. Union v. Von Raab*, 816 F.2d 170, 175 (5th Cir.1987). The United States Supreme Court has concluded that urination is " 'an excretory function traditionally shielded by great privacy.' " *Bd. of Edn. of Indep. School Dist. No. 92 of Pottawatomie Cty. v. Earls*, 536 U.S. 822, 832, 122 S.Ct. 2559, 153 L.Ed.2d 735 (2002), quoting *Skinner* at 626. The act of urination is one of the "few * * * times where individuals insist * * * strongly and universally that they be let alone to act in private." *Lovvorn v. Chattanooga*, 846 F.2d 1539, 1543 (6th Cir.1988). *See also Capua v. Plainfield*, 643 F.Supp.

1507, 1513 (D.N.J.1986) (urine "is normally discharged and disposed of under circumstances that merit protection from arbitrary interference"); *Folmsbee v. Tech Tool Grinding & Supply, Inc.*, 417 Mass. 388, 393, 630 N.E.2d 586 (1994) ("The act of urination is inherently private").

{¶ 53} The direct observation by a stranger of a person's genitalia while the person urinates goes against societal norms that dictate a high level of privacy in that function. As alleged by appellees, they were "required to bare his or her genitalia in the presence of the U.S. Healthworks monitor and to endeavor to produce a urine specimen while such monitor kept his or her eyes fixed on the employee's groin area." Sterilite has offered no reasonable justification for using the direct-observation method for urine collection over less intrusive means, including the procedure it had used previously, which did not involve direct observation of the employee's genitalia. Appellees had provided urine samples for drug testing in the past without being forced to expose their genitalia to a stranger. They also alleged that they had not given "[Sterilite] any reason to believe or suspect that [they] would attempt to compromise the integrity of the specimen collection process used by or for [Sterilite] in administering its drug screening program at any time in the past."

{¶ 54} Sterilite argues in its merit brief that more stringent monitoring procedures are required to defeat the efforts of some employees who might evade providing a urine sample or attempt to falsify a urinalysis result. But there is no basis for Sterilite's assertion that it needed to use a highly intrusive method of monitoring its employees when the employees provided urine samples.

{¶ 55} Methods of collecting urine samples that are less intrusive than the direct-observation method plainly exist. According to appellees' complaint, Sterilite had not used the direct-observation method for drug testing prior to October 2016. Moreover, the United States Department of Transportation uses the direct-observation method only if (1) a urine sample is determined by the laboratory

20

to be invalid without an adequate medical explanation for the result, the original positive, adulterated, or substituted result had to be cancelled because the split sample could not be tested, or the sample was reported to be negative because it was too dilute but its creatinine concentration was within a particular range; (2) the test is a return-to-duty test or a follow-up test; or (3) the employee was observed to be "clearly" trying to tamper with the urine sample or the original sample was out of the acceptable temperature range or appeared to have been tampered with. *See* 49 C.F.R. 40.67(a) through (c). These federal regulations show that employers are justified in using the highly intrusive direct-observation method if there is some reason to believe that an employee will tamper or has tampered with the urine sample. But that did not occur here. And although these regulations were promulgated to govern the drug testing of public-sector employees, they provide legitimate justifications supporting the *limited use* of the direct-observation method across employment sectors.

{¶ 56} The reasonableness of Sterilite's decision to use the direct-observation method is thus a factual question that is not amenable to resolution through the granting of a Civ.R. 12(B)(6) motion to dismiss. I would conclude that appellees have presented facts in their complaint supporting their claim of invasion of privacy. They have a legitimate expectation of privacy when urinating, and direct observation by a stranger while doing so is highly intrusive. There were less intrusive ways for Sterilite to ensure that appellees' urine samples and the results of their drug tests were not the products of tampering. Whether Sterilite had a legitimate reason to use the direct-observation method is a question that goes beyond the allegations in the complaint.

### At-Will Employment

{¶ 57} The at-will-employment doctrine does not diminish an at-will employee's expectation of privacy in this context. At-will employment is a relationship in which either the employer or the employee can terminate the

employment relationship for any cause or no cause. *Collins v. Rizkana*, 73 Ohio St.3d 65, 67-68, 652 N.E.2d 653 (1995). An at-will-employment relationship does not implicate an employee's right to privacy and certainly does not mean that the appellees here had a reduced expectation of privacy because of their employment status.

{¶ 58} To be clear, this case is not about an employer's right to discharge an at-will employee. Nor is this case about an employer's right to require drug testing as a condition of employment—appellees do not dispute that Sterilite could require them to submit to drug testing. Rather, this case is about *how* Sterilite conducted its workplace drug-testing program and whether its use of the direct-observation method of urine collection constituted an invasion of appellees' right to privacy. Whether an employee has been hired on an at-will basis has no effect on the employee's claim that the employer violated his or her right to privacy.

{¶ 59} At best, appellees understood that as at-will employees they could be terminated at any time and for any reason. But they could have had no understanding that their status as at-will employees would require them to provide a urine sample while a stranger directly observed their genitalia. And appellees' complaint makes it clear that appellees Keim and Williamson were not terminated based on their status as at-will employees or the at-will-employment doctrine. Appellees Lunsford and Griffiths each produced a urine sample and were not terminated. Keim and Williamson alleged that they had tried to provide a urine sample but were unable to do so, and they were terminated under Sterilite's substance-abuse policy that considered an employee's failure to provide a urine sample within a specified period of time a "refusal to undergo a drug test."

{¶ 60} Even if the at-will-employment doctrine applied to the facts of this case, an at-will employee cannot be terminated for a reason that is contrary to public policy. *Collins*, 73 Ohio St.3d at 67-68, 652 N.E.2d 653; *House v. Iacovelli*, ___

22

Ohio St.3d ___, 2020-Ohio-435, ___ N.E.3d ___, ¶ 11, citing *Greeley v. Miami Valley Maintenance Contrs., Inc.*, 49 Ohio St.3d 228, 234, 551 N.E.2d 981 (1990).

{¶ 61} When we defined the common-law tort of invasion of privacy, we declared that Ohio's clear public policy prohibits the violation of a person's right to privacy by the wrongful intrusion of private actors. *See Housh*, 165 Ohio St. 35, 133 N.E.2d 340. "[I]n a common-law system, a judicial decision declaring the rights of the parties can be based on several grounds, one of which is public policy." *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 371, 696 N.E.2d 201 (1998), fn. 4, citing Hopkins, *Public Policy and the Formation of a Rule of Law*, 37 Brooklyn L.Rev. 323, 330 (1971). *See also Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co. v. Kinney*, 95 Ohio St. 64, 68, 115 N.E. 505 (1916) ("Sometimes such public policy is declared by Constitution; sometimes by statute; sometimes by judicial decision").

{¶ 62} It follows that the at-will-employment doctrine does not supersede an employee's right to obtain redress for the violation of his or her privacy rights.

*Consent*

{¶ 63} The majority opinion also concludes that regardless of any analysis based on appellees' right to privacy and the at-will-employment doctrine, appellees each consented to providing a urine sample while being directly observed by Sterilite's representative "by their actions" in providing, or attempting to provide, the sample. Majority opinion at ¶ 41. As a broad principle regarding whether a person consented to an act or acted under duress, we have explained that the "real and ultimate fact to be determined in every case is whether the party affected really had a choice; whether he had his freedom of exercising his will." *Tallmadge v. Robinson*, 158 Ohio St. 333, 340, 109 N.E.2d 496 (1952). *See also In re Hua*, 62 Ohio St.2d 227, 232, 405 N.E.2d 255 (1980). Consent is generally an absolute defense to an intentional tort, *see* Restatement of the Law 2d, Torts, Section 892 (1979), and like most defenses, its merit depends on the facts alleged. For this

reason, the defense of consent is usually not amenable to resolution by a Civ.R. 12(B)(6) motion to dismiss.

{¶ 64} Appellants and the majority opinion are disingenuous in stating that appellees consented to providing their urine samples under the direct-observation method. There was no direct consent here to the use of the direct-observation method. The consent form that Sterilite required appellees to sign immediately before they provided or attempted to provide their urine samples *said nothing* about their having to provide the sample while a monitor directly observed their genitalia. And Sterilite did not inform appellees that they would be subject to direct observation until *after* they reported to provide their samples and *after* they had signed the consent form.[1]

{¶ 65} With no direct consent by appellees, the question is whether appellees impliedly consented to the use of the direct-observation method by their actions; that is, whether their actions of submitting or attempting to submit their urine samples while being directly observed constituted consent.

{¶ 66} Appellees had no time to make considered decisions on whether to submit to drug testing under the direct-observation method. Sterilite's substance-abuse policy stated that "[a]ny employee who refuses to undergo a drug/alcohol test will be subject to immediate termination." At the time appellees were required to provide their urine samples, they were presented with two choices: either provide a urine sample under the direct-observation method or be terminated. It would strain the meaning of the word "consent" to suggest that appellees consented under the circumstances in this case.

---

1. Of course, there would be no issue regarding consent if Sterilite's drug-testing policy involved notifying its new employees at the time of their hiring that its policy included the use of the direct-observation method for collecting urine samples. Similarly, when Sterilite decided to institute the use of the direct-observation method, it could have simply notified its employees of the new procedure that it had added to its drug-testing protocol.

**{¶ 67}** Under similar facts, a federal district court determined that an employer's policy requiring its employees to either take a drug test or be terminated was "tantamount to no choice at all" and that the plaintiff-employee in that case did not waive his right to challenge the employer's drug-testing policy by submitting to a drug test. *Doyon v. Home Depot U.S.A., Inc.*, 850 F.Supp. 125, 130 (D.Conn.1994). And in *Polsky v. Radio Shack*, 666 F.2d 824, 825-827 (3d Cir.1981), an employee alleged that her former employer had unlawfully discharged her based on the results of a polygraph test conducted in violation of a Pennsylvania statute prohibiting an employer from requiring an employee to submit to a polygraph examination "as a condition for employment or continuation of employment," despite that the employee had signed a release prior to taking the test. On the question whether the employee had consented to take the test, the Third Circuit Court of Appeals reversed the district court's grant of summary judgment to the employer, holding that an issue of material fact existed as to whether the employee "signed the release under threat of losing her job if she did not." *Id*. at 827. *See also Leibowitz v. H.A. Winston Co.*, 342 Pa.Super. 456, 463-465, 493 A.2d 111 (1985) (consent not valid if given under compulsion).

**{¶ 68}** Under the facts alleged by appellees in their complaint, what happened to them was not much different from being an unwilling participant in a shotgun wedding. Appellees alleged that they were "forced" to expose their genitals to third-party observers. Taking this allegation as true for the purposes of a Civ.R. 12(B)(6) motion to dismiss, *Maitland v. Ford Motor Co*., 103 Ohio St.3d 463, 2004-Ohio-5717, 816 N.E.2d 1061, ¶ 11, whether appellees' alleged implied consent to testing under the direct-observation method was the product of their legitimate fear that they would be terminated is a question of fact outside the scope of a Civ.R. 12(B)(6) motion to dismiss. For the majority to hold as *a matter of law* that appellees consented to having their genitalia observed while they gave, or attempted to give, a urine specimen is to subvert Civ.R. 12(B)(6).

**{¶ 69}** Neither of the other-state cases that the majority cites supports its conclusion that an employee's consent to drug testing precludes the employee from arguing that the testing procedure was "highly offensive," because the employees in those cases had not been ambushed at the restroom door and given the ultimatum to provide their urine samples under direct observation of their genitalia or else lose their jobs. In *Luedtke v. Nabors Alaska Drilling, Inc.*, 768 P.2d 1123, 1126, 1137 (Alaska 1989), the employees had failed to show that the manner of drug testing was unreasonable and complained only about the purpose of the testing. And in *Jennings v. Minco Technology Labs, Inc.*, 765 S.W.2d 497, 498 (Tex.Civ.App.1989), the employee challenged the implementation of a drug-testing policy after the employee had been hired. And that policy contained "various safeguards for accuracy, confidentiality, and *modesty*." (Emphasis added.) *Id.*

**{¶ 70}** In contrast to those cases and as noted above, the employees here are not challenging the drug-testing policy itself—they are challenging the highly-offensive manner in which it took place without prior warning that the direct-observation would be used. This distinction is important when the scope of an employee's consent has been distorted, as the majority has done here, to encompass implied consent without the employee's having a reasonable choice or there being limitations on the testing procedure. At what point would the majority hold that an employer has exceeded the scope of an employee's implied consent in the context of an employee's providing a urine sample? What indignities must an at-will employee suffer to avoid losing his or her income and benefits before the employee has a cause of action for invasion of privacy? Make no mistake, the majority's decision today will disproportionately affect workers who have no meaningful choice and no recourse for their employers' intentional torts.

**{¶ 71}** For these reasons, I respectfully dissent from the majority's decision to reverse the judgment of the court of appeals.

O'CONNOR, C.J., and DONNELLY, J., concur in the foregoing opinion.

26

_____

Law Offices of S. David Worhatch and S. David Worhatch, for appellees.

Brennan, Manna & Diamond, L.L.C., John N. Childs, and Daniel J. Rudary, for appellant Sterilite of Ohio, L.L.C.

Weston Hurd, L.L.P., Daniel A. Richards, and Joshua Miklowski, for appellant U.S. Healthworks Medical Group of Ohio, Inc.

Bolek Besser Glesius, L.L.C., and Matthew D. Besser, urging affirmance for amicus curiae, Ohio Employment Lawyers Association.

_____